UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES W. ROLLINS,

    Plaintiff,

v.

GARY WAKEMAN, et al.,

    Defendant.

CASE NO. 3:17-cv-05943-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: April 12, 2019

    This 42 U.S.C. § 1983 civil rights matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Pending before the Court is defendants' motion for summary judgment. Dkt. 18.

    Plaintiff alleges that defendants, who are Department of Corrections employees, violated his First and Fourteenth Amendment rights when his 2017 request to participate in a Ramadan meal program was denied. Because the Ramadan meal program sign-up policy—which sought to prioritize provision of Ramadan meals to religious prisoners over non-religious prisoners— bore a rational relationship to the legitimate government objective of decreasing costs and

1 | because plaintiff has failed to plead any discriminatory intent, defendants' motion for summary

2 | judgment should be granted.  Therefore, this Court recommends that defendants' summary

3 | judgment motion be granted and that plaintiff's claims be dismissed without prejudice.

4 |

5 | **BACKGROUND**

6 | Plaintiff, who is incarcerated at Stafford Creek Corrections Center, filed this action in

7 | November 2017.  Dkt. 1, at 2.  He alleged that defendants, Wakeman (the chaplain), Belinda

8 | Stewart (the religious program manager), and Brad Simpson (the food services administrator),

9 | violated his First and Fourteenth Amendment rights by refusing to allow him to participate in a

10 | Ramadan meal program so that plaintiff, a practicing member of the Nation of Islam, could

11 | observe Ramadan.  *See* Dkt. 5, at 2–4.  Plaintiff brought his claims against each defendant in his

12 | or her individual capacity.  *See* Dkt. 5, at 2.  This Court reviewed plaintiff's complaint and

13 | ordered it served on defendants.  *See* Dkt. 8, at 1–2.

14 | Defendants now seek summary judgment of plaintiff's First Amendment claim on the

15 | basis that defendants had a legitimate penological interest for denying plaintiff's request to

16 | participate in the Ramadan meal program and of plaintiff's Fourteenth Amendment claim on the

17 | basis that plaintiff has failed to plead or show the requisite discriminatory intent.  *See* Dkt. 18, at

18 | 2.  Plaintiff has filed his response, and defendants have filed their reply.  *See* Dkts. 20, 23.

19 | The underlying, undisputed facts are as follows.  The corrections center offers a program

20 | for meals and prayer during Ramadan, the Islamic holy month of fasting, as well as a year-round

21 | Halal diet and Islamic religious programming in the form of Jumah or Taliem services.  *See* Dkt.

22 | 15, at 2; Dkt. 16, at 2; Dkt. 21, at 2.  In 2017, a sign-up process began for participation in the

23 | Ramadan meal program.  Dkt. 16, at 2.  The sign-up process conditioned participation on

24 |

completing a form and having either participated in Islamic religious programming during the preceding six months or having signed up to receive Halal meals. Dkt. 16, at 2–3; Dkt. 21, at 3. However, there was an exception process for inmates who could not participate in the sign-up process or who were housed at a facility that did not have religious programming such that the inmate could satisfy the requirement of having participated in Islamic religious programming during the preceding six months. *See* Dkt. 16, at 3; Dkt. 21, at 7.

Plaintiff requested to be enrolled in the Ramadan meal program, and defendant Wakeman determined that plaintiff had neither participated in available Islamic programming during the prior six months nor elected to receive a Halal diet. Dkt. 15, at 2–3; *see* Dkt. 21, at 7. Defendant Wakeman also noted that plaintiff had participated frequently in "Native American drummings" and had participated in a Native American Pow-Wow for his annual religious event, rather than the Muslim group's religious event. *See* Dkt. 15, at 2–3. Defendant Wakeman then denied plaintiff's request to participate in the Ramadan meal program. *See* Dkt. 15, at 3.

## SUMMARY JUDGMENT STANDARD

To obtain summary judgment, a movant must show that there is "'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Manley v. Rowley*, 847 F.3d 705, 710 (9th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). The movant is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). And where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and

1  the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has met its initial burden, the nonmoving party may defeat summary judgment by producing evidence of a genuine dispute of material fact.  *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) (citing *Anderson*, 477 U.S. at 254–55).  This Court reviews the pleadings and evidence in the light most favorable to the nonmoving party (*Anderson*, 477 U.S. at 255), and "a pro se complaint will be liberally construed[.]"  *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992).

## DISCUSSION

**I. First Amendment Claims**

Regarding plaintiff's First Amendment claims, defendants assert that there is a reasonable relationship between the legitimate goal of running a simplified, cost-efficient meal service and requiring some "modicum of prior religious adherence or sincerity" for inmates to sign up for the Ramadan meal program.  *See* Dkt. 18, at 7–8.

"'[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  And inmates retain the "'right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion.'" *Id.* (quoting *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987)).  However, "running a simplified food service, rather than one that gives rise to many administrative difficulties," and "the reduction of administrative and

1  budgetary burdens" are legitimate penological interests.  *See Ward v. Walsh*, 1 F.3d 873, 877

2  (9th Cir. 1993); *Shakur v. Schriro*, 514 F.3d 878, 886 (9th Cir. 2008).

3        This Court applies the four-factor test from *Turner v. Safley* to determine whether a

4  prison regulation is reasonably related to a legitimate penological interest:  (1) whether there is a

5  valid, rational connection between the prison regulation and the legitimate governmental interest;

6  (2) whether "there are alternative means of exercising the right that remain open to prison

7  inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards

8  and other inmates, and on the allocation of prison resources generally"; and (4) "the existence of

9  obvious, easy alternatives," which "may be evidence that the regulation is not reasonable, but is

10 an 'exaggerated response' to prison concerns."  482 U.S. 78, 89–91 (1987).  If the first factor is

11 not satisfied, a court need not reach the remaining three factors.  *Prison Legal News v. Lehman*,

12 397 F.3d 692, 699 (9th Cir. 2005).

13       Regarding the first factor, it is undisputed that under the sign-up criteria set forth by

14 defendant Stewart, to participate in the Ramadan meal program, an inmate had to have

15 "participated in any Islamic programing during the prior six months" or be "receiving a Halal

16 diet[.]"  Dkt. 15, at 2; *see also* Dkt. 16, at 3.  However, facility chaplains retained authority to

17 grant exceptions for individuals who did not meet these requirements.  Dkt. 16, at 3.  Exceptions

18 existed for inmates who were unable to participate in the sign-up process or were housed in a

19 facility that did not have religious programming such that the inmate could satisfy the six-month

20 participation requirement.  Dkt. 16, at 3.

21       Defendants set forth that these criteria advanced the legitimate penological goal of

22 reducing costs by providing Ramadan meals to religious inmates and not to non-religious

23 inmates and rely upon defendant Simpson's declaration that in 2017—the year that the sign-up

24

1  process was instituted—the number of inmates who elected to participate in Ramadan was
2  roughly half of the previous year's participants. *See* Dkt. 17, at 3; Dkt. 16, at 2.  Costs also
3  decreased—from roughly $89,000 in 2016 to roughly $35,000 in 2017. *See* Dkt. 17, at 3.  This
4  Court finds that the sign-up policy at issue had a valid and rational connection to the legitimate
5  penological goal of cutting costs.

6  Plaintiff does not appear to contest the validity of the relationship between cutting costs
7  and prioritizing Ramadan meals to religious inmates. *See* Dkt. 20, at 11.  Instead, plaintiff—who
8  was not receiving Halal meals—argues that he is a member of the Nation of Islam and that his
9  religion forbids him from taking part in the Jumah or Taleem services provided at the corrections
10 center, so that he could not meet the six-month participation requirement in order to qualify for
11 the Ramadan meal program.  Dkt. 20, at 8; Dkt. 18, at 2.  But plaintiff's argument fails to defeat
12 summary judgment.  First, plaintiff does not dispute that the program included an exception for
13 those who were housed in a facility that did not have available religious programming. *See* Dkt.
14 20, at 9.  Indeed, plaintiff acknowledges this point, stating that "Defendant Wakeman was given
15 specific instructions from [defendant Stewart] to allow participation for the 2017 Ramadan for
16 inmates—like [plaintiff]—if services for their faith group were not available at the institution."
17 Dkt. 20, at 9.  Thus the Ramadan meal program did not force plaintiff to participate in these
18 services, as plaintiff contends. *See* Dkt. 20, at 8.

19 Moreover, as the party opposing summary judgment, plaintiff has the burden to come
20 forward with evidence that creates a genuine issue of material fact—evidence beyond a
21 "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence[.]" *See*
22 *F.T.C. v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997).  Here, plaintiff's
23 evidence in support of his claim that he could not participate in religious programming at the
24

1  institution is his declaration that Nation of Islam members do "not practice Al-Islam" and that
2  because of the "differences between [his] religion and Al-Islam" he is prohibited "from attending
3  Al-Islamic Jumah or Taleem services[.]" Dkt. 21, at 2.  Plaintiff's unsigned, unsourced
4  "synopsis" of the differences between Nation of Islam and Islam merely states that "[s]ince
5  Jumu'ah in prison is practiced by Al-Islam in only one way, the [Nation of Islam] must have
6  their own service." Dkt. 21, at 11.  Such unattributed, self-serving statements from plaintiff are
7  insufficient to create a genuine issue of material fact to defeat summary judgment.  *See F.T.C.*,
8  104 F.3d at 1171; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (9th Cir. 1990) ("The
9  object of [Fed. R. Civ. P. 56] is not to replace conclusory allegations of the complaint or answer
10 with conclusory allegations of an affidavit.").

11       Further, plaintiff ignores the Ramadan meal program qualification that provided for
12 participation by those who received Halal meals—regardless of whether they had participated in
13 religious services at their institution.  *See* Dkt. 15, at 2.  Plaintiff does not provide any evidence
14 or argument to support that his beliefs forbade him from receiving a Halal diet, which is another
15 reason that his argument that the sign-up policy effectively excluded Nation of Islam
16 practitioners fails to create a genuine issue of material fact.  *See* Dkt. 21.  In short, plaintiff fails
17 to show that the sign-up process for the Ramadan meal program bore no rational relationship to
18 the legitimate government interest of cutting costs, and the first *Turner* factor weighs in
19 defendants' favor.

20       Regarding the second *Turner* factor—alternative avenues that remain open to the inmates
21 to exercise the right—defendants provide evidence that plaintiff could have fasted independently
22 and supplemented his evening caloric intake from the commissary.  Dkt. 18, at 8 (citing Dkt. 15,
23 at 2).  In response, plaintiff relies on no evidence, instead citing the general rule that he has the
24

1  right to be provided with food sufficient to sustain him in good health and satisfying the dietary
2  laws of his religion.  Dkt. 20, at 10; *see, e.g.*, *McElyea*, 833 F.2d at 198.  Because plaintiff fails
3  to provide evidence that he was, in fact, unable to obtain such food, he fails to create a genuine
4  issue of material fact regarding this factor.

5  Turning to the third *Turner* factor—the impact of accommodating the asserted right—
6  defendants rely on evidence that screening out non-religious inmates has resulted in substantial
7  cost savings for the Department of Corrections.  Dkt. 17, at 2–3; Dkt. 18, at 8.  In response,
8  plaintiff argues "prisons cannot use the cost of protecting a constitutional right to justify its
9  denial."  Dkt. 20, at 10.  But this argument is not persuasive for the reasons set forth above,
10 including that the program excepts those who cannot meet the six-month participation in
11 religious programming requirement.  *See* Dkt. 20, at 9; *accord Resnick v. Adams*, 348 F.3d 763,
12 770 (9th Cir. 2003) ("It would be a strange result indeed to conclude that such a program—
13 designed to facilitate the accommodation of the religious dietary needs of thousands of
14 inmates—actually violates inmates' First Amendment rights.").  Plaintiff fails to create a genuine
15 issue of material fact or to show that judgment is inappropriate as a matter of law on this point.

16 Finally, regarding the fourth *Turner* factor—the existence of easy and obvious
17 alternatives—defendants argue that there is no easy and obvious alternative.  *See* Dkt. 18, at 8.
18 Indeed, the Ninth Circuit has held that "[i]t is difficult to think of any alternatives more 'obvious'
19 and 'easy' than" a sign-up process for religious diets.  *Resnick*, 348 F.3d at 770.  Plaintiff
20 provides no meaningful argument related to his claims regarding this *Turner* factor, arguing that
21 the easy alternative was to allow him to participate in the program.  *See* Dkt. 20, at 11.

22 For these reasons, this Court recommends that defendants' motion for summary judgment
23 be granted as to plaintiff's First Amendment claims.  It is therefore unnecessary to reach the
24

REPORT AND RECOMMENDATION - 8

1  parties' arguments regarding whether qualified immunity shields any of the defendants from
2  liability.

3  **II.  Fourteenth Amendment Claims**

4  Defendants further request summary judgment of plaintiff's claims of violation of the
5  Fourteenth Amendment's equal protection clause.  Dkt. 18, at 9.  Plaintiff concedes this issue,
6  although he requests leave to amend his complaint.  Dkt. 20, at 11.

7  **III.  Leave To Amend**

8  Plaintiff requests that if defendants' summary judgment motion is granted, this Court also
9  grant leave to amend.  *See* Dkt. 20, at 13.  He does not explain what additional facts he would
10  offer to justify his request for an amendment.

11  Leave to amend "'is not a vehicle to circumvent summary judgment[.]'"  *Burdett v.*
12  *Reynoso*, 399 Fed. App'x 276, 278 (9th Cir. 2010) (quoting *Schlacter-Jones v. Gen. Tel.*, 936
13  F.2d 435, 443 (9th Cir. 1991)).  Because plaintiff seeks leave to amend his complaint simply to
14  avoid summary judgment dismissal of his claims and because he provides no discussion of what
15  facts he would include so that this Court could determine whether an amendment would be futile,
16  this Court recommends that his request for leave to amend be denied.

17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24

## CONCLUSION

For the reasons set forth above, the Court recommends that defendants' motion for summary judgment (Dkt. 18) be granted and that plaintiff's claims be dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 12, 2019,** as noted in the caption.

Dated this 25th day of March, 2019.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10