HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES W. ROLLINS, | CASE NO. 3:17-cv-05943-RBL |
| Plaintiff, | ORDER ADOPTING REPORT AND RECOMMENDATION |
| v. | |
| GARY WAKEMAN, et al., | |
| Defendant. | |

Having reviewed the entire record, including the administrative record, the memoranda of the parties, and the Report and Recommendation of United States Magistrate Judge J. Richard Creatura, and there being no objection filed by any party, the Court hereby ADOPTS the Report and Recommendation. However, despite agreeing with the Magistrate Judge's conclusion, the following is intended to clarify the Court's reasons for adopting the Report and Recommendation.

James Rollins, who is currently in the custody of the Washington State Department of Corrections (DOC), wished to participate in his prison's Ramadan meal program. The DOC provides a Ramadan meal and prayer program that allows inmates to receive meals within the dietary restrictions before sunrise and after sunset to facilitate fasting. However, the DOC

recently enacted a new sign-up procedure intended to limit program participation to inmates who have demonstrated their sincerely-held beliefs. The process gives priority to inmates who have attended some Muslim religious programming in the last six months or have signed up to receive Halal meals. There are also discretionary exceptions for inmates who cannot meet these requirements. Rollins attempted to sign up but was denied participation because he did not satisfy either of the prerequisites. Rollins is a member of the Nation of Islam and claims that he could not have attended religious programming at his prison in the last six months because the facility only provides Al-Islam services, which his religious convictions bar him from attending.

As the Magistrate Judge explained, "'[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). And inmates retain the "'right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion.'" Id. (quoting *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987)). However, "running a simplified food service, rather than one that gives rise to many administrative difficulties," and "the reduction of administrative and budgetary burdens" are legitimate penological interests. *See Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993); *Shakur v. Schriro*, 514 F.3d 878, 886 (9th Cir. 2008).

This Court applies the four-factor test from *Turner v. Safley* to determine whether a prison regulation is reasonably related to a legitimate penological interest: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards

and other inmates, and on the allocation of prison resources generally"; and (4) "the existence of obvious, easy alternatives," which "may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." 482 U.S. 78, 89–91 (1987). If the first factor is not satisfied, a court need not reach the remaining three factors. *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005).

The Report and Recommendation concluded that the first *Turner* factor favored the DOC for three reasons: (1) Rollins' evidence that he could not attend Al-Islam services was insufficient to create a material dispute of fact, (2) the DOC has an exception that allows inmates to participate in the Ramadan meal program if they are at a facility where they cannot partake in religious programming, and (3) Rollins did not address the fact that he also could have participated in the Ramadan meal program by receiving Halal meals. Dkt. #25 at 7. Rollins objects that the Magistrate Judge "misses the point" of his claim, which is that he *did* fall into the exception for inmates at facilities that lack religious programming. Dkt. #26 at 1. Rollins' also disputes that his evidence showing he cannot attend the Al-Islam services is insufficient. *Id*.

The Court agrees with Rollins that his evidence describing the differences between the Nation of Islam and Al-Islam, which consists mainly of his own declaration and the declaration of his cell mate, is enough to create a material dispute of fact. The religions seem to have legitimate differences such that it is unclear whether Rollins could gain access to the Ramadan meal program via attending religious programming. That said, Rollins' history of attending religious events while incarcerated shows that he did, in fact, attend Muslim Jumah three times in January of 2016. Dkt. #16-1 at 34. Rollins' declaration also suggests that Al-Islam is more intolerant of Nation of Islam beliefs than the other way around.

1    The existence of an exception for inmates at facilities without sufficient programming
2    also appears irrelevant in this case because that exception was not applied. *See* Dkt. #21 at 8. In
3    fact, it is somewhat unclear how this exception functions. Defendant Belinda Stewart's
4    declaration states that there is an "exception process for individuals who . . . were housed at a
5    facility that did not have religious programming such that an individual could satisfy the six-
6    month participation prerequisite." Dkt. #16 at 3. However, while that statement cites to a 2017
7    DOC memo explaining the new Ramadan sign-up process, that memo merely states that those
8    who do not meet the religious programming requirement "will be approved or denied at the
9    discretion of the Facility Chaplain." Dkt. #16-1 at 23.

10       But regardless of whether there is an exception that Rollins qualified for, the DOC's
11   violation of their own internal policy does not equal a constitutional deprivation. And here, even
12   if the only route available to Rollins to participate in the Ramadan meal program was receiving
13   Halal meals, his constitutional claim still fails. As Rollins himself recognizes, the Ramadan meal
14   program basically *is* the Halal meal program delivered on a different timetable. Although Rollins
15   is correct that he "has the right to be provided with food sufficient to sustain [him] in good health
16   that satisfies the dietary laws of [his] religion," he does not have the right to demand such food
17   only at certain times. *See McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). If the Halal
18   aspect of the Ramadan meal program is apparently not too important to Rollins, he fails to
19   explain how the DOC's actions truly prevented him from expressing his religion. Beyond
20   arguing that it is unfair for some Muslim inmates to receive the Ramadan meal program while he
21   does not, Rollins fails to explain why he could not have fasted independently. Limiting the
22   Ramadan program to inmates receiving Halal meals, even if those inmates may be unable to

attend pre-existing religious programming, is rationally related to a legitimate government purpose.

The DOC's Ramadan sign-up process also must be read in light of the policy allowing inmates without established religious programming to request additional programming. Dkt. #16-1 at 5-6. An inmate such as Rollins feels they are prohibited from attending existing services may fill out a form aimed at finding volunteers to represent the religious group and administer programming. Success is not guaranteed, but the choice between attending the existing religious programming and foregoing services altogether is not as stark as Rollins presents it. Here, there is no evidence that Rollins did anything to seek out religious programming that would be acceptable to him. Instead, he chose to attend numerous Native American ceremonies. This left the chaplains with no indications at all that Rollins had sincerely-held beliefs.

For the above reasons, the Court:

(1) ADOPTS the Report and Recommendation;

(2) GRANTS Defendants' Motion for Summary Judgment [Dkt. #8]; and

(3) DISMISSES Plaintiff Rollins' claims WITHOUT PREJUDICE.

If Rollins appeals, his *in forma pauperis* status will continue. The Clerk shall send copies of this Order to Plaintiff and Magistrate Judge Creatura.

IT IS SO ORDERED.

Dated this 23rd day of May, 2019.

Ronald B. Leighton
United States District Judge